**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

PHILIP L. TUCKER ,                   )
                                            )
                 Plaintiff,      )
                                            )
v.                                 )          Civil Action No.  3:07cv298-WHA
                                            )
                                          )               (WO)
BENTELER AUTOMOTIVE ALABAMA, )
INC.,                                    )
                                          )
               Defendant.     )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #41), filed by

Benteler Automotive Alabama, Inc. ("Benteler").

The Plaintiff, Philip L. Tucker ("Tucker"), filed a Complaint, and an Amended

Complaint, in this case bringing claims pursuant to Title VII of the Civil Rights Act of 1964, as

amended, against Benteler for race discrimination (Counts I and II), retaliation (Count III), and

harassment (Count IV).   This court has federal question jurisdiction in this case.

Benteler has filed a Motion for Summary Judgment as to all claims.  Tucker has filed a

brief and evidence in response to that Motion, to which Benteler has replied, with evidence.[1]

For the reasons to be discussed, the Motion for Summary Judgment is due to be DENIED

---

[1]  The only objection the Plaintiff has made to evidence submitted by the Defendant is contained in Exhibit L to the Plaintiff's Brief in Opposition to Summary Judgment, and is an objection to publication of confidential information in the Plaintiff's deposition, and to irrelevant information in the deposition.  The court has not considered irrelevant information and does not refer to any identifying information or medical conditions of the Plaintiff in this opinion.  The court notes, however, that it has only considered evidence attached to the Defendant's Reply brief which was previously disclosed and which is responsive to argument by Tucker.

as to one retaliation claim and GRANTED as to all others.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See*

2

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000)(en banc).

## III. <u>FACTS</u>

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Tucker is an African American man who is employed by Benteler at its Opelika, Alabama plant. Tucker was initially hired by Benteler as a temporary employee in July of 2005, and was hired as a non-temporary employee in November, 2005.

Tucker has alleged that he was denied several positions at the Opelika plant, and that those denials were based on his race, and in retaliation for his complaints of race discrimination. The positions at issue as identified in the Amended Complaint are somewhat different from those identified in Tucker's response to the motion for summary judgment. It is clear, however, that Tucker contends that he was denied, on the basis of race and/or in retaliation for complaining of race discrimination, promotion to several different positions between 2005 and 2007. As to most of these claims, Tucker asserts that he was more qualified than the person given the promotion, largely on the strength of his having been awarded a bachelor's degree.

Tucker also brings claims based on denial of a pay increase and a shift change. Finally, he brings claims of harassment based in large part on an encounter with the plant manager during

which the manager accused him of being away from his work station and used arguably offensive, because the manager used the expletive "shit," but not race-based, language. During this confrontation, the manager accused Tucker of disrupting production and told him that he knew about his legal issues, but he would still fire him. Plaintiff Dep. at page 206:1-07: 16. Other instances of alleged harassment include an additional statement by the Human Resources Manager in response to a question and unspecified demeaning assignments.

## IV. <u>DISCUSSION</u>

The court will separately address Tucker's claims for disparate treatment on the basis of race, his retaliation claims, and his harassment claims.

### A.  Disparate Treatment on the Basis of Race

#### 1. General Legal Principles

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race under Title VII by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th

Cir. 1997).  A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

Tucker has brought disparate treatment claims for various promotions he contends he was qualified to receive.  To establish a prima facie case of discriminatory denial of promotion, a plaintiff must show that (I) he belongs to a racial minority; (ii) he was qualified for and applied for a position the employer was trying to fill; (iii) he was denied the position; and (iv) others who were not members of the protected class were hired, or the employer continued to seek applicants with the plaintiff's qualifications.  *See Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005).

In addition to the principles governing the establishment of a prima facie case, the court notes that the role of relative qualifications has been articulated by Benteler as a legitimate non-discriminatory reason for the employment decisions made by it in this case.  The Eleventh Circuit has held in the past that an employer cannot rely on relative qualifications as a legitimate, non-discriminatory reason if it did not consider the qualifications of the plaintiff.  *Joshi v. Florida State Univ. Health Ctr.*, 763 F.2d 1227 (11th Cir. 1985).  The Eleventh Circuit subsequently has clarified that an employer could rely on relative qualifications as a legitimate, non-discriminatory reason in a case in which the plaintiff is a current employee, because the employer did not consider the plaintiff to be a good candidate for the position.  *See Springer v. Convergys Customer Managm't Group, Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).   It is with these concepts in mind that the court evaluates the disparate treatment claims in this case.

2.  Promotion Claims

The court will address the claims for failure to promote on the basis of race in roughly chronological order, beginning with the earliest claims asserted in the Amended Complaint.

Benteler has presented evidence with regard to three Human Resource positions filled in November 2005 and January 2006, which were identified in the Amended Complaint. Tucker, however, has not presented evidence with respect to these positions.  Because he has failed to create a dispute of fact as to the qualifications of the persons hired as compared to his qualifications, summary judgment is due to be GRANTED as to claims based on these three positions.

Benteler also moves for summary judgment as to a category of positions for which Benteler contests Tucker's qualification, based on the length of time Tucker was employed at Benteler at the time he applied for the promotion.  Benteler has argued that Tucker was not qualified for positions during the first six months of his employment because, under Benteler policy, employees are not eligible for promotion during the first six months.  Plaintiff's Dep. Exh 20 at page 3.  Benteler also points to a company policy wherein new hires have a 90-day qualifying period during which they do not have seniority rights, and may be transferred or discharged.  Plaintiff's Dep. Exh. 19.

Tucker states that he did not receive a Benteler Handbook until March 2006, and argues that he cannot be held responsible for a policy about which he was not informed.   He states that prior to March 2006, when he received the Benteler Handbook, all of the policies known to him were made known by his supervisors.

One position which Tucker identifies in this case is a February 2006 promotion of a

6

white person to a position as Tucker's Supervisor.  Benteler has argued in support of summary judgment that even if Tucker could have applied for a supervisor position in February 2006, no supervisor position was filled in February 2006.  According to Benteler's evidence disclosed in discovery, not only was no supervisor position filled in February 2006, but also the white person whom Tucker claims was promoted then was actually promoted to first shift team leader on November 11, 2005, and was promoted to second shift team leader in June of 2006.

Tucker states in his affidavit that he applied for a supervisor position which was denied, and the next month, February 2006, he applied for a supervisor position, which was denied.[2] With respect to the first 2006 position, he states in his affidavit that he was told by Conti that Richard Messer ("Messer") "was assigned the position because he was already a supervisor." Plaintiff's Exh. A, page 4.  Tucker's additional evidence as to Messer's qualifications is a citation to Messer's history with a previous employer.

Tucker states in his affidavit that he applied for a Night Shift Supervisor position in February 2006, and was told that an African American had been promoted to that position. *Id.* Tucker then states that he discovered that the African American was never promoted.  *Id.* Tucker does not present any evidence that any person was actually promoted in February 2006.

To find that Tucker has established a prima facie case, the court would have to conclude that the facts, viewed in a light most favorable to Tucker, indicate that he applied for an available

---

[2] Benteler states that in his deposition Tucker said he could not remember when he applied for the position given to Messer, and it was only in his affidavit that he claims that the position was filled in January 2006.  Benteler urges the court not to consider the affidavit evidence, because it conflicts with Tucker's deposition testimony.  As discussed below, even considering this evidence, the court concludes that Tucker has failed to create a triable issue of fact as to this claim.

position in January 2006, that Tucker could apply for the position even though he was not

eligible under Benteler's policies, and that the position was filled with a white employee,

Messer, in January 2006.  Even assuming all of those facts, to establish pretext on the basis of

relative qualifications, Tucker would have to show "that the disparities between the successful

applicant's and [his] own qualifications were 'of such weight and significance that no reasonable

person, in the exercise of impartial judgment, could have chosen the candidate selected over the

plaintiff.' " *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir.2006).

 Although Tucker claims not to have been aware that he was not eligible for a promotion in

January 2006, he does not dispute that that is Benteler's stated policy.  There is no evidence that

the policy was applied on a discriminatory basis or that the employer was not acting in good

faith in relying on the policy.  *Cf. Elrod v. Sears, Roebuck, and Co.*, 939 F.2d 1466, 1470 (11th

Cir.1991).  Even viewed in a light most favorable to the non-movant, therefore, the facts that

Tucker was not eligible for the promotion under Benteler's policies, and that Messer was already

in a supervisory role when he received the position, compared with Tucker's evidence does not

create a question of fact as to whether the disparities between Tucker and Messer's qualifications

are so great so that no reasonable person could have chosen Messer over Tucker.  Summary

judgment is, therefore, due to be GRANTED as to this claim.

The next employment action at issue in February 2006 was a shift preference.  As

Benteler explains it, a shift preference exercise allows more senior employees to bid on other

shifts and jobs, and the transfers to other shifts are made based on operational concerns and

seniority.  Benteler also presents evidence from Tucker's deposition that temporary employees

are not affected by shift preference.  Plaintiff Dep. at page 146: 9-12.  During the February 2006

shift preference exercise, Tucker was moved from the first to the third shift.

Tucker presents no evidence regarding this claim. He merely cites to a page of his Amended Complaint, and states in his brief that his move from the first to the third shift was discriminatory because he was the only permanent employee in his area who was moved from the first shift to the third shift, and no white, non-permanent employees were moved to the third shift. *See* Brief in Opposition to the Motion for Summary Judgment at page 10. This argument is not sufficient to create a question of fact as to Benteler's evidence that nine non-temporary employees were moved from first shift based on seniority and preference, and that temporary employees are not affected by shift preference. Summary judgment is, therefore, due to be GRANTED as to this claim.

The next position at issue is a March 2006 Quality Auditor position. In his Amended Complaint, Tucker states that a white machine operator who did not have quality assurance experience was promoted into the position. Benteler, however, presents evidence that the employee promoted to the quality auditor positions, Francis Phan ("Phan"), had prior experience and worked as a welder. Tucker's only response in his brief is to state, as he did in the Amended Complaint, that the person hired did not have quality experience, but Tucker cites to no evidence in support of this contention. Benteler has cited to Tucker's deposition in which he is asked whether he was aware of Phan's experience before Phan was employed at Benteler, and Tucker responds that Phan could not have had much experience because Phan is only 20 years old. Tucker Dep. at page 137: 3-4. This testimony is not sufficient to create a question of fact as to Phan's experience.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to

go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Tucker cannot merely rely on the allegations of his Amended Complaint to create a question of fact as to Phan's experience. Therefore, even assuming that Tucker was eligible to apply for the position despite its having been posted before the end of his first six months of employment, Tucker has failed to create a question of fact as to this claim, and summary judgment is due to be GRANTED.

Tucker has also claimed discrimination in the filling of an August 2006 document control coordinator position to which he states a white woman with less experience and qualifications was promoted.   Tucker admits that he did not apply for the position, but states that he should have been considered.  In his affidavit, Tucker stated that the position was not posted in the plant or on the internet, but in his deposition, Tucker testified that the position was not posted in the plant, but "it might have been" posted on line.  Plaintiff Dep. at page 191: 19-23.

"The 'application' requirement is designed to prevent imposition of civil rights liability on an employer for lacking sufficient clairvoyance and omniscience to divine an employee's unarticulated desire for a vacant job."  *Garrison v. Travel Centers of America,* Civ. No. 04-0429-WS, 2005 WL 1711884 at *11 (S.D. Ala. July 20, 2005).

Benteler argues that the position was posted on line and 36 people applied for it. Benteler points to its discovery responses, Defendant's Exhibit G, to show that the position was posted on line.  Benteler also cites to deposition testimony of Tucker where he agreed the position could have been posted on line and that he was checking on line for postings from time to time.   Plaintiff Dep. at page 191: 21-192:5.

10

Even viewing this evidence in a light most favorable to the non-movant, the court

concludes that Tucker's statement in his affidavit that the position was not posted on line is not

sufficient to create a question of fact.  Tucker testified in his deposition that the position could

have been posted on line, and Benteler has presented documentary evidence that the position was

posted on line.  "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or

deposition will not create an issue of fact for trial sufficient to defeat a well supported summary

judgment." *Gonzalez v. City of Deerfield Beach, Florida,*  510 F. Supp.2d 1037, 1041 -1042

(S.D. Fla. 2007).

Tucker has also argued that the position should have been posted in the plant under

Benteler's procedures, because it was a salaried position.  Tucker Dep. at page 192.

The Benteler Handbook provides as follows:

> All approved salary positions may be posted on specific communication boards at
> each location.  In addition approved salary positions may also be distributed
> Company wide via the electronic mail system and will also be posted on the
> Company website.

Plaintiff Dep. Exh. 19 at page 37.

The court cannot conclude, based on the documentary evidence before it, that a question

of fact has been raised as to whether Benteler followed its own procedures in the posting of this

position on line.  The policy states that the position may be posted on communication boards.

The evidence before the court is that the position was posted on line, that people applied for the

position, that Tucker was aware posting could be made on line, and that Tucker did not apply for

the position.  *Cf. Brinkley v. Dialysis Clinic, Inc.*, 403 F. Supp. 2d 1090, 1099 (M.D. Ala. 2005)

(Thompson, J.) (stating that an employer has no obligation to internally post a position and that

advertisement in a newspaper gave the employee notice of the position).  Tucker, therefore, has

11

failed to establish a prima facie case of discrimination.

Even if Tucker had established a prima facie case, the court cannot conclude that he has submitted sufficient evidence to create a question of fact as to pretext, based on relative qualifications. *See Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir.2006) (stating "that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.' "). Tucker states in brief that the person hired, Shelly Scalf ("Scalf"), admitted to him that she did not know anything about the position, but Tucker cites to no evidence in support of this contention. Tucker also has cited to Scalf's application as evidence that she had not worked in manufacturing before being employed at Benteler and has a high school degree. *See* Plaintiff's Exh. I.

Benteler points to Tucker's deposition as evidence that Scalf was working as a temporary employee for the outgoing Document Control Coordinator and Benteler ultimately hired Scalf as a non-temporary employee to perform the job. Plaintiff Dep. at page 167-68. Tucker admits in his affidavit that Scalf was trained on the job. Plaintiff's Exh. A at page 3. Benteler also has cited to Tucker's deposition in which he stated he was not familiar with some aspects of the job. *Id.* at page 186: 16-20.

The court concludes that the facts that Tucker has a college degree and that Tucker worked at Benteler longer than Scalf as compared to Scalf's having worked for the Document Control Coordinator as a temporary employee and having received training on the job for the position into which she was hired is not sufficient evidence from which to conclude that no

reasonable person could have chosen Scalf over Tucker.  Summary judgment is due to be GRANTED on this alternative basis.

The next position placed at issue by the allegations of the Amended Complaint is a June 2006 Quality Auditor position.  Benteler states in moving for summary judgment on this claim that in June 2006 it posted three Quality Auditor/Receiving Inspector positions, two of which were filled with African American men, and one of which was filled with John Locke ("Locke"), a white man.   Benteler states that Locke was more qualified for the position because he had been at Benteler for over a year before Tucker was hired, and that he had been a welder before being hired by Benteler.   Tucker does not appear to have responded to this argument, or to have presented any evidence which creates a question of fact as to his qualifications relative to Locke's.  Accordingly, summary judgment is due to be GRANTED as any claims brought in the Amended Complaint based on this position.

Tucker has stated in his brief in response to the Motion for Summary Judgment that in November 2006 he applied for, but did not receive, an Administrative Assistant position which was awarded to a white woman.  Tucker cites no evidence in support of this contention. Benteler has stated in its Reply that there is no allegation regarding this position in the Amended Complaint, and that the reference to the position in Tucker's brief is vague and is unsupported by any evidence.  The court agrees, and summary judgment is due to be GRANTED as to this claim.

Tucker also states in his brief that he was denied an April 2007 Quality Engineer position on the basis of his race.  He states that the position should have been posted, but was not.  It is

unclear what position this is.[3]  There is no contention regarding an April 2007 position in the Amended Complaint, and no evidence establishing a prima facie case as to this claim. Therefore, summary judgment is therefore due to be GRANTED as to this claim.

Tucker has also argued in his brief that he was denied a Team Leader position in August 2007, which was given to a white man who did not apply for the position.  There are several issues presented in connection with this claim.  The first is that Benteler concedes that the position was not posted, but has provided the court with evidence that not all positions must be posted.  The Handbook states that positions need not be posted if they are part of organizational changes, individual career progress, or senior leadership positions.  Plaintiff's Dep. Exh. 19 at page 37.   Whether viewed as a case where the position should have been posted, or a case where Benteler had a duty to consider Tucker for the unposted position, the court concludes that Tucker has established a prima facie case of discrimination.

Benteler has presented evidence that a white employee, Matthew Hall ("Hall"), received the position of Team Leader in August 2007.  Hall was hired by Benteler in September 2005. Bentler points to evidence of Hall's employment history to demonstrate his qualifications. Benteler argues that Hall had worked in the industry for four years and had prior supervisory and welding experience.  Benteler states in brief that Tucker does not and cannot dispute that Benteler prefers individuals with welding experience.  Benteler has not, however, submitted any evidence that welding was considered important.  Hall also had ten months supervisory experience at Benteler.

---

[3] Tucker may have intended to refer to an August 2007 quality engineer position, discussed below.

Tucker attempts to demonstrate that Benteler's articulated reason that Hall received the job based on his qualifications is pretextual by arguing that Hall was not as qualified as Tucker. Tucker states that while Benteler argues that welding is preferred, being a welder is not a requirement of the position as listed in the job posting.  Tucker points out that according to the job posting, a college degree is preferred and he, not Hall, has a college degree.  *See* Plaintiff's Exh. J.   Tucker also provides evidence that Hall had disciplinary actions at Benteler.

The job posting which Tucker points to as describing this position lists an associate's degree or equivalent work experience, states that a bachelor's degree is preferred, and lists 2-3 years of automotive experience preferably in a supervisory role.  *Id.*  The job description also provided to the court by Tucker, but not pointed to by him specifically and which apparently was not part of the job posting, states that the job specifications are three years experience at Benteler Automotive or an associate's degree and one to two years supervisory experience.  *Id.* at page 4.

From the evidence presented, both employees had two to three years of experience in the automotive industry, both employees had a specified preference in that Hall had supervisory experience and Tucker had a bachelor's degree, and neither Tucker nor Hall had 3 years experience at Benteler or an associate's degree and two years of supervisory experience.[4]  While Tucker has questioned Hall's work performance, Benteler has presented evidence from supervisor's critical of Tucker's work with Benteler.  *See* Defendant's Exh. A at page 2.

As noted earlier, to show pretext based on relative qualifications, a plaintiff must show

---

[4]  If the description in the job specification were a requirement for the position actually posted by Benteler, Tucker would not have a prima facie case because he would not be qualified for the position.  Benteler has not argued that Tucker was not qualified, merely that Hall was more qualified.

"that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.' " *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006).  The court cannot conclude that the evidence presented by Tucker is sufficient to meet that standard.  Tucker's primary argument appears to be that he had a bachelor's degree, and the expressed preference for such a degree means that he should have been considered more qualified.   It is not within the province of the court, however, to "question the wisdom of choosing someone with [no degree] over someone with a college diploma," *Keaton v. Cobb County,*  545 F. Supp.2d 1275, 1309 n. 25 (N.D. Ga. 2008), *aff'd*, No. 08-11220, 2009 WL 212097 (11th Cir. Jan. 30, 2009) (unpublished), especially here, where the degree is only listed as a preference.  Also, Hall had supervisory experience. At most, the two employees were equally qualified for the position.  The court concludes, therefore, that summary judgment is due to be GRANTED as to this claim.

Benteler also filled a Quality Engineer position in September of 2007 which Tucker claimed in the Amended Complaint was discriminatorily denied him.  Benteler explains that Heath Johnsey was hired based on his knowledge and experience, and that in his deposition, Tucker revealed that he did not know what Johnsey's knowledge and experience was.   Tucker does not appear to have responded to this argument, nor has he presented evidence to create a question of fact as to this claim.  Therefore, summary judgment is due to be GRANTED as to this claim.

Tucker has also referred in his brief to a December 2007 Manager position.  Benteler has replied that this position was not identified in the Amended Complaint and is vague and is not

16

supported by any evidence.  The court agrees, and summary judgment is due to be GRANTED as to this claim.

### B.  Retaliation Claims

To establish a claim of retaliation, a Plaintiff must show that (1) he participated in a protected activity, (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the two.  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

### 1.  Protected Activities

The first issue raised by Benteler in moving for summary judgment as to the retaliation claims asserted by Tucker is the protected activity at issue in this case.  As Benteler points out, the protected activities identified by Tucker in his Amended Complaint are the EEOC charge in September 2006 and the lawsuit filed in April 2007.

In his brief in opposition to the Motion for Summary Judgment, Tucker contends that he complained to Human Resource Manager Alison Conti ("Conti") about not being promoted.  There is no allegation in the Amended Complaint about retaliation being based on a complaint voiced internally at Benteler.   In addition, while Tucker states in his affidavit that he complained to Conti, all he says is that he "complained with Alison Conti, a white female, about being denied the promotion," and it was Conti who told him that "Richard Messer, a white male, was assigned the position because he was already a supervisor."  Tucker Aff. at ¶ 11.   The court has also reviewed the deposition pages cited to by Tucker and sees no testimony by Tucker that Conti was made aware that Tucker was voicing a complaint of race discrimination.  Tucker refers in his deposition to a written complaint, but does not testify to the substance of that

complaint, or submit any complaint for the court to review.  There is, therefore, no evidence that Tucker's complaint identified that he was complaining of race discrimination.

"Plaintiff's complaints, which lacked any mention of discrimination, were not statutorily protected activity." *Wehunt v. R.W. Page Corp.*, 352 F. Supp. 2d 1342, 1358 (M.D. Ga. 2004) (citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1075 (11th Cir.1995)). Therefore, there is no evidence before the court that Tucker made a complaint of race discrimination internally at Benteler.  The court, therefore, will only consider the filing of the EEOC charges and this lawsuit as protected activities in this case.

### 2.  Claims for Which There is Insufficient Evidence of Causation

A plaintiff can establish causation for a retaliation claim by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000).   If the plaintiff relies merely on temporal proximity, however, that proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  The relevant dates of protected activities for this analysis in this case are as follows:  the first EEOC charge was filed on September 14, 2006; the Complaint in this case was filed on April 9, 2007; the second EEOC charge was filed on October 2, 2007; and the Amended Complaint was filed on June 6, 2008.

Many of the employment actions identified in the Amended Complaint and relied on by Tucker in response to the Motion for Summary Judgment, preceded the first EEOC charge.  No causation can be inferred from the timing of these actions.  *See Swanson v. Civil Air Patrol*, 37 F. Supp. 2d 1312, 1326 (M.D. Ala. 1998).   Therefore, summary judgment is due to be GRANTED as to retaliation claims based on positions filled before the first of the protected

activities, the first EEOC charge filed in September, 2006, which would include the administrative positions filled in 2005; the supervisor position Tucker claims was filled by Messer in January, 2006 and the position which remained unfilled in February, 2006; the February 2006 shift change to third shift; the March, 2006 position filled by Phan; and the August, 2006 position filled by Scalf.[5]

The hiring of Hall in August, 2007 and the promotion of Heath Johnsey in September, 2007, while occurring after the first EEOC charge, were approximately one year after the first EEOC charge, and four months after the Complaint filed in this case, and before the second EEOC charge. Tucker has pointed to no evidence other than timing to support his claim of retaliation as to these positions. The Eleventh Circuit has determined that there was insufficient proof of causation where a complaint was made in April and an adverse employment action was taken three months later in July of the same year. *Thomas v. Cooper Lighting*, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Furthermore, as stated above, there can be no causation when the protected activity follows the challenged action. Therefore, Tucker has failed to establish causation, and has failed to establish a prima facie case of retaliation, with respect to these positions. Summary judgment is due to be GRANTED as to these claims.[6]

---

[5] As stated earlier, Tucker has stated in his brief in response to the Motion for Summary Judgment that in November 2006 he applied for but did not receive an Administrative Assistant position which was awarded to a white woman. He also asserted that he applied for a engineer position in September of 2007 and a December 2007 Manager position. Tucker cites no evidence in support of these claims as either race or retaliation claims. For the same reasons discussed in connection with the race discrimination claim, therefore, summary judgment is due to be GRANTED as to retaliation claims based on these positions.

[6] To the extent that summary judgment is due to be granted as to these claims as addressed above within the context of the race discrimination claims, Tucker has also failed to create a question of fact as to pretext, and summary judgment is due to be GRANTED on this

### 3.  Lead Pay Claim

Tucker has claimed that after he filed his first EEOC charge, in September 2006, lead pay was removed from his salary, effective October, 2006.  According to Tucker, he had been receiving lead pay until he filed his EEOC charge, and that pay was taken away in retaliation for his having filed his first charge.[7]

Benteler moves for summary judgment on several grounds as to this claim, one of which is that Benteler ultimately determined that it would continue to pay Tucker lead pay, and that it retroactively paid Tucker the lead pay to October 2006, so that there is no evidence of an adverse employment action.

An adverse employment action has been defined as an action that a "reasonable person would find materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  The Eleventh Circuit has declined "to hold as a matter of law that a retroactive pay raise can 'undo' the harm caused by a discriminatory or retaliatory act because such a decision could permit employers to elude liability for conduct that otherwise is actionable." *Crawford v. Carroll,* 529 F.3d 961, 972 (11th Cir. 2008).  Therefore, the retroactive payment of lead pay does not mean that the action was not materially adverse.  Tucker has established a prima facie case of retaliation.

---

alternative basis.

[7] Tucker does not appear to claim that this denial was based on his race. If he does claim discrimination on the basis of race in the denial of lead pay, he has failed to present any evidence that persons outside of his protected class were treated differently.

Tucker had received lead pay while he was on first shift.  He transferred to third shift in February 2006, and continued to receive lead pay there.  In September, 2006, he transferred back to first shift and filed his first EEOC.  He lead pay was discontinued the next month.

Benteler has presented as a non-retaliatory reason for its removal of lead pay that Tucker was not entitled to lead pay in October, 2006 because he was no longer a lead person at that time.  In an affidavit submitted in support of the Motion for Summary Judgment, Lamont Johnson ("Johnson"), a supervisor, states that Tucker was a temporary lead person on first shift in late 2005.  Defendant's Exh. A at page 2.  Johnson states that he told Johnson his lead status was temporary.  *Id.*  It was this status as lead person which entitled Tucker to lead pay.  Johnson further states that when Tucker moved to the third shift in February 2006, he was no longer a lead person, but erroneously continued to receive lead pay.  *Id.*  Johnson states that the error was discovered when Tucker transferred again to first shift in September 2006, and his lead pay was terminated at that time. *Id.*

Benteler also argues that it was only in an act of good faith, and to avoid further litigation, that in March of 2008. it began paying Tucker lead pay again and retroactively paid him lead pay from October, 2006.  While Benteler has provided the court in its brief with this explanation for this reinstatement of the lead pay, Benteler has not provided evidence to support its contention that the lead pay was reinstated to avoid further baseless complaints and litigation.  In her letter written to Tucker, Jennifer Jordan ("Jordan"), attorney for Benteler, states that it was not clear that the removal of lead pay was in error, but the records no longer reflect why it occurred, so the lead pay would be reinstated.  Plaintiff's Exh. E.

In the portion of Tucker's deposition relied upon by Benteler, Tucker stated that he was a

21

lead inspector in the third shift, and that when he transferred back to the first shift as part of a shift preference in September of 2006, it was as a quality inspector.  Plaintiff  Dep. pages 161: 20-163: 3.   In another portion of Tucker's deposition, however, he states that when he went from the third shift back to the first shift, he thought he was "going back to the position that I left on the first shift as a lead quality inspector."  *Id.* at page 227: 6-16.  When asked whether he confirmed this with anyone he answered that he did not, but that it "should have been in the same position."  *Id.*  Tucker's position appears to be, therefore, that when he went back to the first shift, he was entitled to the pay he had received when he was last on the first shift.

Tucker also has pointed to a document entitled "Roles and Responsibilities for Lead Inspector," outlining the duties of the lead person, and argues that he must have been the lead person because he received the document.  The document, however, is undated, and there is no evidence to establish whether it was given to Tucker at a time when it is undisputed that Tucker was a lead inspector.

Tucker explains the progression of events when he complained about the removal of lead pay as follows.  He states that he inquired of Conti why the pay had been removed and was told that this was the "way it was going to be."  Tucker states in his affidavit that he then inquired of his supervisor Charles Dixon ("Dixon") about the pay being taken away, and Dixon made inquiry of Johnson, and that both Dixon and Johnson went with Tucker to see another management official, Charles Nacrelli, about reinstating the pay increase.  Plaintiff's Exh. A at page 5.  Finally, Tucker points out that Benteler reinstated his lead inspector pay and that the reason given for that reinstatement in the letter from Jordan was not the avoidance of litigation as Benteler has stated in its brief, but that  "[a]lthough it is not clear that this pay reduction was in

22

error, our records no longer reflect why it occurred."  Plaintiff's Exh. E.

Viewing all of the evidence presented in a light most favorable to the non-movant, it appears to the court that there is a conflict in the evidence as to why Tucker's lead pay was taken away immediately after he filed an EEOC charge.  The letter written by Jordan is undated, but appears to have been written at the time the decision was made to reinstate the pay after Tucker complained in March, 2008.  When asked about the removal of the lead pay, Conti did not tell Tucker that a mistake had been made.  Johnson's affidavit which purports to explain precisely why the pay was removed, is dated September 30, 2008, and is after the letter which stated that the records do not reflect why the pay was taken away.  Johnson does not state that he made the decision to remove the pay, but states that "Benteler discovered" that he was receiving lead pay to which he was no longer entitled, and "adjusted Mr. Tucker's pay accordingly."  Defendant's Exh. A at page 2.  According to Tucker, when he inquired about the removal of the pay, Johnson accompanied him to find out why it had been taken away, and the pay ultimately was reinstated. The court must conclude, therefore, that, under the evidence submitted to the court, there is a triable issue of fact as to Tucker's entitlement to, and the reason articulated for the removal of, lead pay, and that summary judgment is due to be denied as to this retaliation claim.

### C.  Harassment

To prove a hostile working environment a plaintiff must show that (1) he belongs to a protected group, (2) he has been subject to unwelcome harassment, (3) the harassment has been based on a protected characteristic, (4) the harassment is sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment, and (4) the employer is responsible for the environment under a theory of vicarious

or direct liability.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).[8]

Tucker appears to point to the following incidents which he claims constituted harassment: a statement by Conti, the human resources manager "that is the way it is going to be," when he was told that he would no longer be receiving lead pay, a confrontation Tucker had with a manager, Vernon Steen ("Steen"), in which an expletive, but not any race-based comments were used,[9] demeaning work assignments, a refusal of medical treatment, and being pursued by employees who were assigned to videotape and/or photograph him while he performed his work.

None of the evidence pointed to by Tucker even arguably relates to his race.  There is no evidence of any race-based comments.  "This is not to say that a racially hostile work environment cannot exist without racial epithets, but there must be evidence sufficient to convince a jury that employees within a protected class were singled out because of their protected class."  *Buckhanon v. Huff & Associates Const. Co., Inc.,* 506 F. Supp. 2d 958, 965 (M.D. Ala. 2007) (Watkins, J.).  The court has not been pointed to any evidence that the conduct identified was race-based.  The court concludes, therefore, that Tucker has failed to show that he was subjected to harassment on the basis of race.  The conduct identified by Tucker could, however, be viewed as instances of retaliatory harassment.

The Eleventh Circuit has recently expressed, albeit in an unpublished opinion, some

---

[8] Although Tucker does not specifically address such a racial harassment claim in response to the motion for summary judgment, he does continue to refer to both harassment and retaliation.  Therefore, the court will analyze both theories.

[9] Tucker also states that Steen sent him home for three days without pay.  Tucker has not asserted a separate disparate treatment or retaliation claim based on this action.

doubt as to "whether a plaintiff can even bring a 'retaliatory harassment claim . . . .'" *Andrews-Willmann v. Paulson*, 287 Fed. Appx. 741 (11th Cir. 2008).  This court has confronted this issue in the past and was satisfied that if such a claim is recognized, the harassment, to constitute an adverse employment action, must be sufficiently severe and pervasive to alter a term or condition of employment.  *Perryman v. West*, 949 F. Supp. 815 (M.D. Ala. 1996) (Albritton, J.).

The Sixth Circuit has recognized a claim of retaliatory harassment based on actions of supervisors, stating that such a claim requires proof that (1) the plaintiff engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  *Morris v. Oldham Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).

The severe and pervasive element of a harassment complaint has an objective component pursuant to which courts consider the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance.  *Miller v. Kenworth of Dothan, Inc.,* 277 F.2d 1269, 1275 (11th Cir. 2002).

There is no evidence to support Tucker's statement in his brief that he was being photographed or videotaped or that he was denied medical treatment.  Therefore, there are only three instances of alleged harassment supported by evidence in this case.  One is a comment by Conti regarding Tucker's pay increase and the other is the confrontation with Steen involving harsh language.  Conti's statement was not physically threatening.  Steen's comment while arguably offensive, because it involved an expletive, is not itself actionable on that basis.  *See*

25

*Baldwin*, 480 F.3d at 1301 (11th Cir.2007) ("Title VII does not prohibit profanity alone, however profane."). Steen's comments also were not physically threatening.

It is unclear when Conti's comment was made. The Amended Complaint indicates that Steen's conduct occurred in May 2007. Tucker has stated in his affidavit that he was given demeaning work assignments, but he does not say when, or how many times, or how the assignments were demeaning. The court cannot conclude that, even when considered together in a light most favorable to the non-movant, that the evidence of the two documented incidents, and unspecified demeaning work assignments, occurring sometime between October 2006 and May 2007, is evidence of conduct which is sufficiently severe and pervasive to constitute a retaliatory work environment. *Cf. Buckhanon*, 506 F. Supp. 2d 958, 966 (collecting cases and stating that "[t]hree instances of derogatory language in a two month period does not rise to the level of frequency found actionable in Eleventh Circuit precedent."). Summary judgment is, therefore, due to be GRANTED as to this claim.

## V. <u>CONCLUSION</u>

For the reasons discussed, the court concludes that Tucker has created a triable issue of fact as to one retaliation claim. Accordingly, the Motion for Summary Judgment is DENIED as to the retaliation claim for denial of lead pay, and is GRANTED and Judgment is entered in favor of Benteler Automotive Alabama, Inc. and against Philip L. Tucker as to all other claims in Counts I, II, III, and IV of the Amended Complaint.

The case will proceed to trial on the retaliation claim for denial of lead pay.

Done this 3rd day of March, 2009.

 /s/ W. Harold Albritton                          
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE